**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

**LIBERTY MUTUAL INSURANCE**
**COMPANY, et al.,**

                                **Plaintiffs,**

               **-against-**

**ACCURATE MEDICAL DIAGNOSTICS, PC,**
**et al.,**

                                **Defendants.**

-------------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**13-CV-7256 (CBA)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty

Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation,

Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company,

and LM Property and Casualty Insurance Company (collectively, "plaintiff" or "Liberty

Mutual") commenced the instant action on December 20, 2013.  <u>See</u> Complaint (Dec. 20,

2013) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.  Plaintiff has

asserted claims against the professional corporations Accurate Medical Diagnostics, PC

("Accurate"), Novacare Medical, PC ("Novacare"), and Integrity Medical Services, PC

("Integrity"); the physicians Ahmed Elemam, MD, Tatyana Gabinskaya, MD, and Samuel

Walters, MD; and individuals Jeffrey Lereah and John Does 1–5 (collectively, "defendants").

Defendants are accused of stealing money from Liberty Mutual by submitting, or causing to be

submitted, fraudulent claims for nonreimbursable healthcare services purportedly provided to

individuals involved in automobile accidents.  Based on the alleged fraud, plaintiff seeks both

damages and a declaratory judgment declaring that defendants are not entitled to recover any currently outstanding charges from plaintiff.

Defendants Novacare and Dr. Gabinskaya (the "Defaulting Defendants"), although properly served, have not appeared in this action. Accordingly, the Clerk of the Court entered a certificate of default against Novacare on January 21, 2014, <u>see</u> DE #17, and against Gabinskaya on February 4, 2014, <u>see</u> DE #22.

Now before this Court, on a referral from Chief Judge Carol B. Amon, is plaintiff's motion for default judgments against the Defaulting Defendants.[1] For the reasons stated herein, this Court respectfully recommends that the District Court grant plaintiff's motion in substantial part and enter judgment holding Gabinskaya liable to plaintiff in the amount of $216,936.00, and holding Novacare jointly and severally liable for a portion of that award equal to the sum of $72,312.00 and prejudgment interest on $72,312.00 at a rate of nine percent (9%) per annum, using a formula described herein. Finally, this Court respectfully recommends that the District Court enter a declaratory judgment that plaintiff is not obligated to pay the pending claims submitted by Novacare.

---

[1] Liberty Mutual also moved for default judgments against Accurate, Integrity, and Drs. Elemam and Walters, but withdrew its motion as to these defendants after settling with them. <u>See</u> Motion to Withdraw (May 22, 2014), DE #50; Order (May 23, 2014); Motion to Withdraw (June 20, 2014), DE #53; Order (July 16, 2014). As a courtesy to the Court, plaintiff should have promptly alerted the Court that it was engaged in settlement negotiations with those defendants, as their withdrawal from consideration on this motion has impacted the Court's analysis.

## BACKGROUND AND FACTS

New York State's "no-fault" law created an insurance system to provide medically necessary healthcare services to persons injured in motor vehicle accidents ("Insureds"). Liberty Mutual, which underwrites automobile insurance, Compl. ¶ 22, is obligated under the "no-fault" law and implementing regulations ("No-Fault Laws") to provide personal injury benefits ("No-Fault Benefits") to Insureds for necessary expenses in amounts up to $50,000 per person, see Allstate Ins. Co. v. Smirnov, 12–CV–1246 (CBA)(SMG), 2013 WL 5407224, at *1 (Aug. 21, 2013), adopted, slip op. (E.D.N.Y. Sept. 25, 2013), DE #197 in Smirnov; see also N.Y. Ins. Law §§ 5101–5109; 11 N.Y.C.R.R. §§ 65-1.1 through 65-5.5 (collectively, the "No-Fault Laws"). Insureds may assign their rights to No-Fault Benefits to healthcare services providers in exchange for healthcare services, and such assignment allows the provider to receive payment directly from the insurance company. See 11 N.Y.C.R.R. § 65-3.11(a).

There are, however, several limitations on a healthcare provider's right to receive No-Fault Benefits that are pertinent to this case. First, a healthcare provider may receive benefits for treating an Insured only if the provider meets the state's licensing requirements. See 11 N.Y.C.R.R. § 65-3.16(a)(12). These requirements "prohibit nonphysicians from owning or controlling medical service corporations," State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320–21 (2005), require shareholders of medical professional corporations to actually practice medicine through the corporation, see N.Y. Bus. Corp. Law § 1507, and prohibit fee-splitting with persons not authorized to practice medicine, see N.Y. Educ. Law

§ 6530(19).  Insurance carriers may withhold payment for medical services provided by enterprises fraudulently incorporated in contravention of New York's licensing requirements.  See Mallela, 4 N.Y.3d at 319.  An additional restriction on a healthcare provider's right to collect No-Fault Benefits is that only providers in possession of a direct assignment of benefits may do so.  See 11 N.Y.C.R.R. § 65-3.11(a).  Hence, the person billing and collecting payment from an insurer must be either the actual provider of the service or the provider's employee, and not an independent contractor.  See Compl. ¶ 124 (citing opinion letters from the New York State Insurance Department).

Plaintiff alleges that defendants engaged in a scheme to defraud Liberty Mutual and other insurers under the No-Fault Laws between 2009 and 2012.  See id. ¶¶ 1, 4.[2]  The scheme revolved around the fraudulent incorporation of several professional medical corporations (the "PC Defendants"), including Novacare.[3]  According to the complaint, Novacare was fraudulently incorporated in 2009, with New York-licensed physician Gabinskaya acting as a "paper owner" and falsely representing that she truly owns, controls, and practices medicine through the corporation.  See id. ¶¶ 15, 47–49, 51–53.  In exchange for

---

[2]  The facts referenced herein are primarily derived from plaintiff's complaint, which the Defaulting Defendants have not controverted.

[3]  As an exhibit to the complaint, plaintiff attached a criminal indictment in the case of United States of America v. Zemylansky, No. 12-CR 171 (S.D.N.Y.).  The indictment charges Gabinskaya, Lereah, and several other individuals not named in the instant matter with various offenses, including Conspiracy to Commit Health Care Fraud and Conspiracy to Commit Mail Fraud, arising out of an ongoing insurance fraud scheme.  See Ex. 4 to Compl.  At the time of this Report and Recommendation, Lereah had pleaded guilty, see Compl. ¶ 44, and the prosecution of Gabinskaya was in the pretrial stage.

this service, Gabinskaya received a salary or other form of compensation. See id. ¶ 48. Meanwhile, the true ownership and control of Novacare rested with Lereah and the John Doe defendants (the "Management Defendants"), who used Novacare to improperly employ healthcare professionals, control their practices, and enrich themselves. See id. ¶¶ 40, 50.

Rather than maintain fixed treatments locations, Novacare operated through a network of medical clinics located throughout greater New York City (the "No-Fault Clinics"), and, at the Management Defendants' direction, purported to provide services to the No-Fault Clinics' patients. See id. ¶¶ 37, 40. The Management Defendants would dispatch healthcare professionals to the No-Fault Clinics, and would subsequently pay these professionals on the street, often in cash. Id. ¶ 40. In return for access to the No-Fault Clinics' patients, defendants provided financial incentives and/or kickbacks to the No-Fault Clinics. Id. ¶¶ 38, 40. Novacare, then, would fraudulently bill Liberty Mutual for medical services to Insureds, thereby receiving thousands of dollars in No-Fault Benefits. See id. ¶¶ 1, 39, 47.

According to plaintiff, defendants had no right to bill or collect insurance benefits for these services because (1) Novacare was fraudulently incorporated, owned, and/or controlled by nonmedical professionals; (2) Gabinskaya and Novacare unlawfully split fees with nonmedical professionals; (3) the services were medically unnecessary, performed pursuant to a predetermined protocol designed to enrich defendants, and billed so as to misrepresent or exaggerate the level of services, if any, provided to the Insureds; and (4) the services were

frequently provided by independent contractors, though fraudulently billed as if performed by Novacare's employees.  See id. ¶¶ 2, 88–123, 125, 127, 129.[4]

As a result of Novacare's fraudulent billing, plaintiff paid claims in the amount of $72,312.00 to Novacare.  See Declaration of Thomas Brosnan (Apr. 14, 2014) ("Brosnan Decl.") ¶ 7, DE #37-2.  Additionally, $144,575.70 in claims by Novacare are currently in dispute, and Novacare is engaged in collection litigation in state court to recover on some of these claims.  See id. ¶¶ 9, 11; Ex. 3 to Brosnan Decl.

## DISCUSSION

### I.  Timing of the Disposition of Plaintiff's Motion

After the Clerk of the Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.  Fed. R. Civ. P. 55(a)–(b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).  A party's default admits all well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Here, the Defaulting Defendants have not appeared although properly served, and the Clerk of the Court has therefore entered certificates of default against them.[5]

---

[4]  Liberty Mutual's complaint attaches as an exhibit a partial summary of Novacare's fraudulent claims.  See Exhibit ("Ex.") 1 to Compl.

[5]  Liberty Mutual also affirms that it has made no prior request for the relief sought herein to this Court or any other tribunal, and that it has mailed its motion papers to the Defaulting Defendants' last known addresses pursuant to Local Civil Rule 55.2(c).  See Declaration of

(continued…)

Only one issue potentially complicates plaintiff's entitlement to a default judgment at this time: At least one non-defaulting defendant, Lereah, remains in this action. In order to conserve judicial resources and avoid inconsistent judgments in multi-defendant cases that, like this one, allege joint and several liability, the usual practice in this district is to defer damages inquests against defaulting defendants until the disposition of claims against the non-defaulting defendants. See, e.g., Clement v. United Homes, LLC, 10-CV-2122 (RRM)(RLM), 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010) (collecting cases); see also Order (Mar. 7, 2014), DE #25. However, plaintiff opposes a deferral, see Plaintiff's Letter (Mar. 14, 2014), DE #29, and now requests that the Court enter judgment against the Defaulting Defendants without delay, see Memorandum of Law in Support of Plaintiff's Motion for Default Judgment (Apr. 14, 2014) ("Pl. Mem.") at 26–28, DE #36.[6]

"When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "[E]ntering such judgment is contrary to settled case law only when true joint liability is at issue, 'such that, as a matter of law, no one defendant may be

---

[5](...continued)
Michael A. Sirignano (Apr. 14, 2014) ¶¶ 15, 17, DE #37. Additionally, plaintiff's counsel states that, pursuant to the Service Members Relief Act, 50 U.S.C. § 521(b), he determined through investigation that Gabinskaya does not currently serve in the United States military. See Sirignano Decl. ¶¶ 10–11.

[6] Plaintiff requests, in the alternative, that the Court at least enter judgment on the declaratory judgment claim, in order to prevent the Defaulting Defendants from continuing to pursue collection actions against plaintiff. See Pl. Mem. at 28 n.4.

-7-

liable unless all defendants are liable.'" Smirnov, 2013 WL 5407224, at *4 (quoting Friedman v. Lawrence, No. 90 Civ. 5584 (VLB), 1991 WL 206308, at *2 (S.D.N.Y. Oct. 2, 1991)). While there are "no fixed criteria" for determining whether a partial judgment is appropriate under Rule 54(b), "courts typically consider whether the 'adjudicated claims are independent from the remaining claims' and whether a 'defendant's solvency or ability to pay a judgment in the future is in question.'" Id. (quoting Mitchell v. Lyons Prof'l Servs., 727 F.Supp.2d 116, 119–20 (E.D.N.Y. 2010)).

The particular circumstances of this case present no just reason for a delay: Jeffrey Lereah, the only defendant who has neither defaulted nor settled with plaintiff, has already pleaded guilty to substantially similar allegations in the related criminal case. See Compl. ¶ 44. Since it thus appears probable that no defendant will contest liability, there is little risk of inconsistent judgments. Additionally, this is not a "true" joint liability case; although the Defaulting Defendants are alleged to be involved in a common scheme with the non-defaulting defendants, plaintiff makes specific allegations as to each defendant. Therefore, this Court respectfully recommends that plaintiff's motion for a default judgment against the Defaulting Defendants be resolved at this time.

## II. Liability

Although this Court concludes that plaintiff's motion for a default judgment may be decided now, "[t]he issue remains . . . whether plaintiff's well-pleaded allegations in the complaint, if accepted as true, establish liability for all the claims plaintiff[] raise[s] against defendants." Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611,

2012 WL 1427796, at *4 (E.D.N.Y. Apr. 6, 2012), adopted, 2012 WL 1432213 (E.D.N.Y.

Apr. 25, 2012). Plaintiff seeks a default judgment (1) against Novacare on its first cause of

action for declaratory judgment; (2) against Novacare and Gabinskaya on its second cause of

action for common law fraud; (3) against Novacare and Gabinskaya on its third cause of action

for unjust enrichment; (4) against Gabinskaya on its fourth cause of action for a substantive

RICO violation under 18 U.S.C. § 1962(c); and (5) against Gabinskaya on its fifth cause of

action for RICO conspiracy under 18 U.S.C. § 1962(d). See Pl. Mem. at 1–2.[7] This Court

addresses in detail all but the substantive RICO claim against Gabinskaya, which need not be

resolved for reasons stated below. See infra p. 21 n.11.

### A. Declaratory Judgment Against Novacare

Plaintiff seeks a judgment declaring that it is not liable to pay the outstanding claims for

No-Fault Benefits submitted by Novacare.[8] A court may exercise its discretion to enter a

declaratory judgment in cases where the party seeking the judgment demonstrates the existence

of an actual case or controversy. See 28 U.S.C. § 2201(a); Infinity Health Prods., 2012 WL

1427796, at *4. "Declaratory relief is appropriate '(i) where the judgment will serve a useful

purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and

---

[7] Although plaintiff has additional outstanding claims against the Defaulting Defendants,
plaintiff is not pursuing a default judgment on these additional claims. See Pl. Mem. at 2 n.1.

[8] The declaratory judgment sought by plaintiff, while occasionally denominated as one
"against all Defaulting Defendants," see, e.g., Pl. Mem. at 1, in fact runs against the entity
defendant only, as evidenced in the Proposed Default Judgment accompanying plaintiff's
motion papers, see [Proposed] Default Judgment (Apr. 14, 2014) at 3, DE #37-4 (proposing
that "[d]efault judgment be entered against Defendant[] . . . Novacare Medical, PC . . . .").

afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" Universal Acupuncture Pain Servs., PC v. State Farm Mut. Auto. Ins. Co., 196 F.Supp.2d 378, 384 (S.D.N.Y. 2002) (quoting Maryland Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)).  A federal court applies the substantive law of the state in which it sits when deciding whether to award declaratory relief.  See NAP, Inc. v. Shuttletex, Inc., 112 F.Supp.2d 369, 372 (S.D.N.Y.2000).  Under New York law, an insurer's assertion of defenses against payment of a no-fault insurance claim or bill must affirmatively plead compliance with the applicable mandatory time limit for responding to insurance claims.  See Hosp. for Joint Diseases v. Travelers Prop. Cas. Ins. Co., 9 N.Y.3d 312, 317–18 (2007) ("[A] carrier that fails to deny a claim within the 30-day period is generally precluded from asserting a defense against payment of the claim.").  An insurer can, by establishing that it maintains and follows standard internal procedures for the timely mailing of responses to no-fault claims, create a rebuttable presumption that the responses were mailed within the time limit imposed by statute.  See, e.g., N.Y. & Presbyterian Hosp. v. Allstate Ins. Co., 814 N.Y.S.2d 687, 688 (2d Dep't 2006); Lenox Hill Hosp. v. Allstate Ins. Co., 930 N.Y.S.2d 175, at *3 (N.Y. Dist. Ct. 2011) (unreported table decision).  "Courts within this district have, on numerous occasions, found [the above] requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims."  Infinity Health Prods., 2012 WL 1427796, at *4; see also Gov't Employees Ins. Co. v. Gateva, No. 12–CV–4236 (MKB), 2014 WL 1330846, at *5–6 (E.D.N.Y. Mar. 30, 2014).

Plaintiff has established that its claim for declaratory relief presents an actual controversy for which a declaratory judgment would afford specific relief and clarify plaintiff's legal obligations in connection with pending no-fault insurance claims. As recounted above, plaintiff's complaint alleges that Novacare has submitted thousands of dollars in fraudulent claims that Liberty Mutual has already paid out, as well as bills for an even greater aggregate amount of unpaid fraudulent claims. See, e.g., Compl. ¶ 1; Ex. 1 to Compl. Plaintiff states that the amount of unpaid claims actively in dispute between it and Novacare is $144,575.70, and that, while ignoring this federal action, Novacare is currently attempting to recover a portion of the disputed amounts through active, pending collection litigation.[9] See Brosnan Decl. ¶ 11; Ex. 3 to Brosnan Decl.

Based on the uncontested allegations in Liberty Mutual's complaint, which are deemed admitted because of the default, Novacare has no right to payment under the No-Fault Laws for the outstanding insurance claims. Plaintiff's complaint alleges, with particularity, that these pending claims are part of defendants' ongoing scheme to submit fraudulent claims for No-Fault Benefits. See Compl. ¶¶ 6, 36–63, 141–148. Plaintiff also alleges that Novacare was fraudulently incorporated and ineligible to seek or recover no-fault benefits, was engaged

---

[9] Although the pendency of state court collection actions raises the question whether the District Court should abstain from entering a declaratory judgment in this case, abstention is unwarranted under the circumstances presented here, for the reasons stated in a series of similar cases decided in this district. See Gov't Employees Ins. Co. v. Leica Supply, Inc., No. 11-CV-3781 (KAM)(VVP), 2014 WL 1311544, at *3–7 (E.D.N.Y. Mar. 28, 2014); Gov't Employees Ins. Co. v. AMD Chiropractic, P.C., No. 12–cv–4295 (NG)(JO), 2013 WL 5131057, at *8 n.4 (E.D.N.Y. Sept. 12, 2013); Smirnov, 2013 WL 5407224, at *8 n.6; Gov't Employees Ins. Co. v. Five Boro Psychological Servs., P.C., 939 F.Supp.2d 208, 215–17 (E.D.N.Y. 2013).

in unlawful fee-splitting with unlicensed individuals and entities, and that many of the billed-for services were not provided by Novacare's employees. See id. ¶¶ 143–144, 146–147. Furthermore, plaintiff alleges that healthcare services provided by Novacare were not medically necessary and that the bills misrepresented and exaggerated the level of services provided. See id. ¶ 145. Finally, plaintiff contends that Liberty Mutual timely responded to disputed claims in accordance with New York law and its standard office practices and procedures. See id. ¶¶ 137–139. These allegations suffice to establish that Novacare's operations were permeated with fraud, that Novacare has no right to disputed claims in the amount of $144,575.70, and that plaintiff is entitled to the requested declaratory judgment. See Smirnov, 2013 WL 5407224, at *14; Gateva, 2014 WL 1330846, at *6. Therefore, this Court respectfully recommends that a declaratory judgment be entered declaring that Liberty Mutual is not obligated to pay the outstanding claims submitted by Novacare.

**B. Common Law Fraud Claims Against Novacare and Gabinskaya**

To state a claim for fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). "Where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant." Infinity Health Prods., 2012 WL 1427796, at *5.

Plaintiff has pled facts establishing each element of its common law fraud claims. The complaint establishes that Novacare and Gabinskaya submitted, or caused to be submitted, bills to plaintiff that failed to disclose (1) Novacare's fraudulent incorporation, ownership, and control by non-physicians; (2) Novacare's illegal fee-splitting and referral arrangements with non-physicians; (3) that the billed-for services were not medically necessary and were inflated, and were performed and billed for pursuant to a predetermined, fraudulent treatment and billing protocol designed to enrich the owners and controllers of Novacare; and (4) that services performed were provided by independent contractors, rather than Novacare's employees. See Compl. ¶¶ 130–140, 150–155. Additionally, plaintiff provides a chart detailing specific fraudulent claims submitted by Novacare. See Ex. 1 to Compl. Regarding Gabinskaya, the complaint establishes that she caused the submission of fraudulent bills by serving as Novacare's nominal owner. See Compl. ¶¶ 47–63. These allegations are sufficient to establish material misrepresentations or omissions of fact for purposes of a fraud claim. See Gateva, 2014 WL 1330846, at *6; Infinity Health Prods., 2012 WL 1427796, at *5.

Next, plaintiff alleges, in detail and with specificity, that Novacare and Gabinskaya not only knew that Novacare was submitting fraudulent claims for medical services to Liberty Mutual, but that they acted intentionally, as part of a calculated scheme to profit from payment of the claims, and that they actively misrepresented and concealed information to prevent plaintiff from discovering that the claims were fraudulent. Compl. ¶¶ 5, 36, 131, 133–135, 150–153. These facts are sufficient to establish the elements of knowledge and intent to

-13-

defraud.  See Gateva, 2014 WL 1330846, at *6; Infinity Health Prods., 2012 WL 1427796, at *5.

Plaintiff has also established that it reasonably relied on representations in the bills submitted to Liberty Mutual because (i) the claims were falsely verified; (ii) defendants actively concealed their fraud; and (iii) plaintiff was statutorily and contractually obligated to process the claims within 30 days, forcing plaintiff to rely on defendants' facially valid submissions.  See Compl. ¶¶ 132–140; Gateva, 2014 WL 1330846, at *6.

Finally, plaintiff has alleged injury resulting from the fraud in that it paid money to Novacare in reliance on Novacare's fraudulent bills.  See Compl. ¶¶ 1, 6, 154; Brosnan Decl. ¶ 7; Ex. 1 to Brosnan Decl.  "These particularities are more than sufficient to show that [the Defaulting Defendants are] liable for fraud."  Infinity Health Prods., 2012 WL 1427796, at *6 (citing AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. CV-04-2934 (ERK), 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005)); see also Gateva, 2014 WL 1330846, at *6–7. Therefore, this Court respectfully recommends that Novacare and Gabinskaya be held liable for common law fraud.

## C. Unjust Enrichment Claims Against Novacare and Gabinskaya

For a plaintiff to prevail on a claim of unjust enrichment under New York law, it "must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."  Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001) (citing Universal City Studios, Inc. v. Nintendo Co.,

797 F.2d 70, 79 (2d Cir. 1986)); see also AIU Ins. Co., 2005 WL 3710370, at *14. In light of the allegations discussed in connection with plaintiff's fraud claims, plaintiff has adequately alleged that Novacare and Gabinskaya were enriched at plaintiff's expense in that they received proceeds from claims submitted to Liberty Mutual for medical services that were inflated, exaggerated, fabricated, and/or otherwise fraudulent. See Compl. ¶¶ 48, 62, 162; Brosnan Decl. ¶ 7; Ex. 1 to Brosnan Decl. Additionally, plaintiff has demonstrated that Novacare and Gabinskaya participated in an elaborate, large-scale plan designed to "siphon money out of a statutory scheme designed for the public good" and that "equity and good conscience require restitution." Infinity Health Prods., 2012 WL 1427796, at *6. These allegations are sufficient to state a claim for unjust enrichment against Novacare and Gabinskaya. See Gateva, 2014 WL1330846, at *7; Smirnov, 2013 WL 5407224, at *11; Infinity Health Prods., 2012 WL 1427796, at *6. Therefore, this Court respectfully recommends that these defendants be found liable for unjust enrichment.

### D. RICO Conspiracy Claim Against Gabinskaya

Plaintiff has alleged that Gabinskaya violated 18 U.S.C. § 1962(d) by participating in a conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act, or "RICO." A plaintiff "injured in his business or property" as a result of such a conspiracy may recover damages under 18 U.S.C. § 1964(c). A RICO conspiracy exists where a defendant agreed with others to conduct or participate in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity. See 18 U.S.C. §§ 1962(c)–(d); United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009); United States v. Yannotti, 541

F.3d 112, 121 (2d Cir. 2008). "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). The elements of a substantive RICO violation under section 1962(c) are, in turn, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see also Allstate Ins. Co. v. Halima, No. 06–CV–1316 (DLI), 2009 WL 750199, at *3 (E.D.N.Y. Mar. 19, 2009).[10] Where the pleading's allegations suffice to establish a substantive RICO violation, liability for a RICO conspiracy under section 1962(d) will attach where the plaintiff establishes that the defendant agreed to the scheme. See Smirnov, 2013 WL 5407224, at *7.

Here, plaintiff has adequately alleged all the elements of the object of the alleged RICO conspiracy (that is, a substantive violation of RICO). First, to satisfy the enterprise element, a complaint must allege "an association of individuals . . . [that] share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." AIU Ins. Co., 2005 WL 3710370, at *6 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004)). A corporation may constitute such an enterprise. See 18 U.S.C. § 1961(4). Plaintiff has alleged that Novacare is an ongoing

---

[10] Courts frequently employ a seven-element formulation for a section 1962(c) violation. See, e.g., Infinity Health Prods., 2012 WL 1427796, at *7 ("(1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce."). "However the elements are broken down, the substantive crime remains the same and is governed by § 1962." Halima, 2009 WL 750199, at *3 n.3.

enterprise affecting interstate commerce under 18 U.S.C. § 1961(4), <u>see</u> Compl. ¶ 164, and

the complaint sets forth in detail that Novacare is a fraudulently incorporated professional

corporation used as a vehicle to commit insurance fraud, <u>see, e.g.</u>, <u>id.</u> ¶ 47. Therefore, the

complaint satisfactorily establishes that Novacare is an enterprise under RICO. <u>See</u> <u>Gateva</u>,

2014 WL 1330846, at *8; <u>Smirnov</u>, 2013 WL 5407224, at *8; <u>Gov't Employees Ins. Co. v.</u>

<u>Hollis Med. Care, PC</u>, No. 10 Civ. 4341(ILG)(RML), 2011 WL 5507426, at *4–5 (E.D.N.Y.

Nov. 9, 2011).

In this case, the next element, "racketeering activity," is limited by statute to specific enumerated

crimes, including mail fraud. <u>See</u> 18 U.S.C. § 1961(1)(B). To plead mail fraud under 18

U.S.C. § 1341, a plaintiff must allege: "(1) the existence of a scheme to defraud involving

money or property; (2) the use of the mails or wires in furtherance of the scheme; and (3) a

specific intent to defraud, either by devising, participating in, or abetting the scheme." <u>State</u>

<u>Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., PC</u>, No. 04 CV 5045(ILG), 2008 WL

4146190, at *11 (E.D.N.Y. Sept. 5, 2008). The second of these elements requires a showing

that: (1) the defendants caused the mailing, namely that they must have acted with knowledge

that the use of the mails would follow in the ordinary conduct of business or where such use

could reasonably be foreseen, even though not actually intended; and (2) the mailing was for

the purpose of executing the scheme or incidental to an essential part of the scheme. <u>Id.</u>

In this case, plaintiff alleges numerous violations of the federal mail fraud statute.

Plaintiff has made detailed allegations of a scheme by Gabinskaya and the Management

Defendants to defraud insurers by using Novacare to submit fraudulent bills for No-Fault

Benefits.  See Compl. ¶¶ 36–63, 88–112, 123–140.  A necessary component of the scheme

was the mailing to Liberty Mutual of statutorily prescribed claim forms for No-Fault Benefits,

which Gabinskaya and the Management Defendants would, at the very least, reasonably

foresee would result in use of the mails.  See id. ¶¶ 130–140, 165, 173–174.  Hence, plaintiff

has established that these defendants acted with knowledge that use of the mails would follow

in the ordinary conduct of business and that the mailings were for the purpose of executing the

scheme.  Plaintiff has also established specific intent to defraud on the part of the Management

Defendants, as masterminds and leaders of the scheme, and Gabinskaya, as a participant

through her role as "paper owner" of Novacare.  See, e.g., id. ¶¶ 47–63.  Hence, the element

of racketeering activity is satisfied in this case.  See Gateva, 2014 WL 1330846, at *8;

Smirnov, 2013 WL 5407224, at *6.

       To sustain its RICO conspiracy claim, plaintiff must also establish that the object of the

conspiracy included a "*pattern* of racketeering activity" consisting of "at least two acts of

racketeering activity" undertaken within a ten-year period.  See 18 U.S.C. § 1961(5)

(emphasis added).  "To establish a pattern, a plaintiff must also make a showing that the

predicate acts of racketeering activity by a defendant are 'related, and that they amount to or

pose a threat of continued criminal activity.'"  DeFalco v. Bernas, 244 F.3d 286, 320 (2d Cir.

2001) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)).  One

means of satisfying this so-called "continuity" requirement is "by demonstrating an 'open-

ended' pattern of racketeering activity that poses a threat of continuing criminal conduct

beyond the period during which the predicate acts were performed."  Spool v. World Child

Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). "Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is . . . open-ended continuity." DeFalco, 244 F.3d at 323 (citing H.J. Inc., 492 U.S. at 242–43).

Here, as already indicated, plaintiff has alleged substantially more than two predicate acts of mail fraud. See, e.g., Compl. ¶ 165; Ex. 1 to Compl. Additionally, plaintiff has established that open-ended continuity exists because Novacare's fraudulent billing involved inherently unlawful acts, conducted through an enterprise whose entire business was racketeering activity involving the submission of fraudulent claims for No-Fault Benefits. See, e.g., Compl. ¶ 167; see also Allstate Ins. Co. v. Lyons, 843 F.Supp.2d 358, 369–70 (E.D.N.Y. 2012). Hence, the pattern element has been satisfied.

The final element of a substantive section 1962(c) RICO violation requires a showing that a person employed or associated with the enterprise participated in the operation or management of the enterprise. See DeFalco, 244 F.3d at 309 (citing Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)). That person must have "some part in directing [the enterprise's] affairs." Reves, 507 U.S. at 179. Here, plaintiff has satisfied the "operation or management" test at least as to the Management Defendants, who allegedly masterminded the fraudulent scheme and controlled Novacare's operations. See, e.g., Compl. ¶¶ 50, 55, 62; Smirnov, 2013 WL 5407224, at *9; AIU Ins. Co., 2005 WL 3710370, at *9.

Plaintiff therefore has adequately alleged the elements of a substantive RICO violation -- the object of the charged RICO conspiracy. In order to establish Gabinskaya's liability for RICO conspiracy, plaintiff need only establish that Gabinskaya agreed to further the unlawful

scheme.  See Salinas, 522 U.S. at 65; Smirnov, 2013 WL 5407224, at *7.  Specifically, the dispositive inquiry is "whether an alleged conspirator knew what the other conspirators 'were up to' or whether the situation would logically lead an alleged conspirator 'to suspect he was part of a larger enterprise.'"  United States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000) (quoting United States v. Viola, 35 F.3d 37, 44–45 (2d Cir. 1994)).  Plaintiff alleges that Gabinskaya knowingly "agreed, combined and conspired" with the Management Defendants to the commission of repeated acts of mail fraud by using the enterprise Novacare to mail fraudulent bills to Liberty Mutual.  See Compl. ¶¶ 173–174.  As nominal owner of the enterprise, Gabinskaya agreed to aid the repeated acts of mail fraud.  See id. ¶ 48.  These allegations are sufficient to establish that Gabinskaya knowingly participated in a RICO conspiracy.  See Gateva, 2014 WL 1330846, at *8–9; CPT Med. Servs., 2008 WL 4146190, at *15; State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., 375 F.Supp.2d 141, 151 (E.D.N.Y. 2005) ("[D]efendants may be liable for aiding and abetting, i.e., supporting, the alleged conspiracy.") (citing United States v. Rastelli, 870 F.2d 822, 832 (2d Cir. 1989)).

Plaintiff has also sufficiently alleged an injury proximately caused by the RICO conspiracy.  "[P]roximate cause in RICO actions requires that 'there be some direct relation between the injury asserted and the injurious conduct alleged.'"  CPT Med. Servs., 2008 WL 4146190, at *13 (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).  Plaintiff has established that it was injured in that it paid in excess of $72,000 pursuant to fraudulent bills submitted by Novacare.  See Compl. ¶ 168.  Since the complaint alleges that Liberty Mutual reasonably relied on Novacare's fraudulent billing, see Compl. ¶¶ 132–140,

plaintiff has established the requisite direct relationship between the injury and the conspiracy, see CPT Med. Servs., 2008 WL 4146190, at *13. Hence, this Court respectfully recommends that Gabinskaya be held liable on the RICO conspiracy claim.[11]

## III. Damages

An admission of liability by default does not admit damages; the plaintiff bears the burden of proving damages, and the defendant must be given the opportunity to contest the amount. See Greyhound, 973 F.2d at 158. Where, as here, the defendant has never appeared, "the Court's determination is based solely on plaintiff's submissions." Gilbert v. Hotline Delivery, No. 00–CV–0160 (MBM)(RLE), 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2011). It is within the Court's discretion to decide whether or not to hold an evidentiary hearing prior to assessing damages. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

---

[11] Plaintiff has also moved for a default judgment on its substantive RICO claim against Gabinskaya under section 1962(c). While plaintiff's allegations establish all the elements of a substantive RICO violation as the object of the RICO conspiracy, this Court doubts whether, given the allegations in the complaint, Gabinskaya could be held liable under section 1962(c), which requires that the defendant "have some part in directing [the enterprise's] affairs." Reves, 507 U.S. at 179; see, e.g., Compl. ¶ 52 ("Dr. Gabinskaya has exercised zero control over or ownership interest in Novacare Medical.").

In any event, the Court need not determine whether Gabinskaya is liable under the substantive RICO claim; plaintiff seeks the same damages under both the substantive claim and the conspiracy claim, and is not entitled to recover cumulative damages under the two claims. See Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery.") (citing Wickham Contracting Co. v. Board of Educ., 715 F.2d 21, 28 (2d Cir. 1983)).

In support of its motion, plaintiff submitted the declarations of Michael Sirignano, an attorney representing Liberty Mutual, <u>see</u> Sirignano Decl. ¶ 1, and of Thomas Brosnan, a claims manager at Liberty Mutual, <u>see</u> Brosnan Decl. ¶ 1. Brosnan provided a "tax identification payment run" ("TIN Run") listing all voluntary payments on claims by Liberty Mutual to the PC Defendants, including Novacare. <u>See</u> Brosnan Decl. ¶¶ 5A, 6; Ex. 1 to Brosnan Decl.[12] The TIN Run identifies the billing medical provider, claim numbers, dates of payment, and amounts of payments made. <u>See</u> Ex. 1 to Brosnan Decl. Courts have found this type of documentary evidence sufficient to award damages in similar RICO default cases. <u>See</u> <u>Allstate Ins. Co. v. Howell</u>, No. 09–CV–4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013); <u>Smirnov</u>, 2013 WL 5407224, at *15. Hence, plaintiff's documentation is sufficient.

**A. Common Law Claims Against Gabinskaya and Novacare**

Plaintiff seeks to hold Novacare and Gabinskaya jointly and severally liable for compensatory damages in the amount of $72,312.00, which plaintiff's documentation shows is what Liberty Mutual paid in reliance on Novacare's fraudulent claims. <u>See</u> Brosnan Decl. ¶ 7; Ex. 1 to Brosnan Decl. "In a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." <u>Gov't Employees Ins. Co. v. Damien</u>, No. 10–CV–5409 (SLT)(JMA), 2011 WL

---

[12] Brosnan also included a "Claim Run" identifying *all* claims submitted to Liberty Mutual by the PC Defendants and a "Litigation Run" identifying currently active collective lawsuits by the PC Defendants against Liberty Mutual. <u>See</u> Brosnan Decl. ¶¶ 6B–C, 8–9; Exs. 2–3 to Brosnan Decl.

5976071, at *7 (E.D.N.Y. Nov. 3, 2011) (citing <u>Chubb & Son Inc. v. Kelleher</u>, Nos. 92-CV-4484(CBA)(RML), 95-CV-0951(CBA)(RML), 2006 WL 1789118, at *5 (E.D.N.Y. Apr. 28, 2006)), <u>adopted</u>, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2011).  Hence, this Court respectfully recommends that Gabinskaya and Novacare be held jointly and severally liable for $72,312.00 in compensatory damages based on plaintiff's common law claims.

### B. RICO Conspiracy Claim Against Gabinskaya

Liberty Mutual seeks an additional $144,624.00 in damages against Gabinskaya beyond the amount discussed above, for a total of $216,936.00, representing treble damages under RICO.  <u>See</u> Pl. Mem at 25.  "In a RICO conspiracy, defendants are jointly and severally liable for all of the plaintiff's damages, even those with which an individual defendant was not personally involved."  <u>Infinity Health Prods.</u>, 2012 WL 1427796, at *9.  Furthermore, treble damages are available under RICO, 18 U.S.C. § 1964(c), and such an award is appropriate in a default judgment.  <u>Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.</u>, No. 10 CV 1762(RER), 2013 WL 168079, at *7 (E.D.N.Y. Jan. 16, 2013).  Therefore, this Court respectfully recommends that Gabinskaya be held liable for $144,624.00 under the RICO conspiracy claim, in addition to the $73,312.00 discussed above.[13]

### C. Prejudgment Interest

Plaintiff seeks prejudgment interest of nine percent (9%) per annum on its non-RICO fraud claims against both Gabinskaya and Novacare.  <u>See</u> Pl. Mem. at 25–26.  New York law

---

[13]  Section 1964(c) also permits recovery of reasonable attorney's fees.  Plaintiff, however, does not seek fees in its pending motion, <u>see</u> Pl. Mem., and this Court therefore recommends that no fees be awarded.

provides for the award of prejudgment interest on damages for fraud, computed from the "earliest ascertainable date the cause of action existed" at the non-compoundable rate of nine percent (9%) per annum. Gateva, 2014 WL 1330846, at *8 (quoting N.Y. C.P.L.R. §§ 5001(a), 5004)). Such interest is awarded as of right. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir. 1986). With respect to Novacare -- for which liability has been sought and established only as to the state law claims -- this Court knows of no reason why prejudgment interest should not be awarded, with an important caveat noted further below. Nevertheless, a separate award of prejudgment interest against Gabinskaya is not warranted; assuming this Court's recommendation is adopted, Gabinskaya will be liable for treble damages under RICO, and a further award of prejudgment interest would, in this Court's view, constitute duplicative compensation for a single injury.

"A basic principle of compensatory damages is that an injury can be compensated only once. If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained." Bender v. City of New York, 78 F.3d 787, 793 (2d Cir. 1996); see also Indu Craft, 47 F.3d at 497. Nevertheless, distinct remedies available under overlapping causes of action, though related to a single injury, may be recoverable if each remedy serves a fundamentally different purpose. See Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Thus, in Reilly, which involved overlapping claims for breach of contract and violation of the New York Labor Law ("NYLL"), the Second Circuit held that the plaintiff could recover prejudgment interest, awarded pursuant to N.Y. C.L.P.R. § 5001, under the contract claim, in addition to liquidated damages on a portion of the contract damages for which the defendant was also liable under the NYLL. See id. Awarding both

remedies was appropriate because liquidated damages under the NYLL are intended to act as a deterrent, whereas prejudgment interest serves the "fundamentally different purpose" of compensating the plaintiff for the lost use of money.  Id.[14]

Applying the principle against duplicative compensation, this Court concludes that plaintiff is not entitled to recover prejudgment interest from Gabinskaya on the fraud claim, in addition to RICO treble damages.  First, it is well established that the purpose of prejudgment interest under C.L.P.R. § 5001 is to make an aggrieved party whole.  Spodek v. Park Prop. Dev. Assocs., 96 N.Y.2d 577, 581 (2001); see also Woodling v. Garrett Corp., 813 F.2d 543, 561 (2d Cir. 1987) ("The purpose of a prejudgment interest award is to remedy the delay in compensating a plaintiff for a loss.").  Similarly, the Supreme Court has held that RICO's treble damages provision primarily plays a compensatory role.  See PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 406 (2003); Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 240–41 (1987).  Hence, awarding prejudgment interest against Gabinskaya -- in addition to treble damages for the same injury -- would amount to duplicative compensation inconsistent with the law of the Second Circuit.  See Bender, 78 F.3d at 793; Reilly, 181 F.3d at 265.[15]

---

[14]  On the other hand, a plaintiff entitled to doubled liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., may not also recover prejudgment interest on its actual damages, since liquidated damages under the FLSA serve a compensatory rather than deterrent or punitive purpose.  See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988).

[15]  To be sure, several courts in this district have, on motions for default, awarded prejudgment interest pursuant to fraud claims in addition to treble damages under overlapping RICO claims.  See, e.g., Gateva, 2014 WL 1330846, at *11; Infinity Health Prods., 2012 WL 1427796, at *9.  In contrast, in National Gasoline, 2013 WL 168079, at *8 n.8, the court concluded that no separate award for interest under C.P.L.R. § 5001 was appropriate because the plaintiff "is already awarded treble damages, and any prejudgment interest is subsumed by the RICO

(continued...)

Moreover, since duplication of compensation is improper not only as between different causes of action, but also between different defendants, see Bender, 78 F.3d at 793–94,[16] any recovery of prejudgment interest from Novacare should be offset against the treble damages award against Gabinskaya. Hence, in effect, Gabinskaya will be liable for a total of $216,936.00, of which Novacare will be jointly and severally liable for an amount equal to $72,312.00 plus prejudgment interest.

For calculation purposes, plaintiff suggests a convenient and conservative method whereby interest is deemed to accrue on payments from January 1 of the year following the year in which the payments were made, through the date judgment is entered. See Sirignano Decl. ¶ 14; Ex. C to Sirignano Decl., DE #37-3. Of the total $72,312.00 paid to Novacare,

---

[15](...continued)
recovery." This Court would follow the reasoning of National Gasoline.

Plaintiff is entitled to recover under the legal theory that provides the most complete recovery, see Magee v. U.S. Lines, Inc., 976 F.2d 821, 822 (2d Cir. 1992), which in this case is treble damages under RICO. Assuming *arguendo* that plaintiff were not adequately compensated by treble damages, the District Court could, in its discretion, award prejudgment interest *under RICO*. See Abou-Khadra v. Mahshie, 4 F.3d 1071, 1084 (2d Cir. 1993) ("Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court had discretion as to whether to award such interest.") (citing Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp., 534 F.2d 422, 446 (2d Cir. 1975)); Bingham v. Zolt, 810 F.Supp. 100, 101–02 (S.D.N.Y. 1993) (denying a request for prejudgment interest under RICO where treble damages more than adequately compensated the plaintiff for actual damages suffered). But since treble damages are more than sufficient to satisfy their remedial role in this case, plaintiff has not sought and would not be entitled to prejudgment interest under RICO.

[16] As the Second Circuit observed in Bender, 78 F.3d at 739: "[O]nce an award of damages has been determined for an injury, there may not be additional compensatory damages for that same injury from two or more defendants."

$37,864.00 was paid in 2009 and $34,448.00 in 2010.  See Ex. C to Sirignano Decl.  This Court finds the suggested method to be reasonable, and therefore respectfully recommends that Novacare's prejudgment interest be calculated at a rate of nine percent (9%) per annum on $37,864.00 from January 1, 2010, to entry of judgment, and on $34,448.00 from January 1, 2011, to entry of judgment.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant plaintiff's motion for a default judgment in substantial part and enter judgments against defendants Novacare Medical, PC and Tatyana Gabinskaya, MD for common law fraud and unjust enrichment, and against Gabinskaya for RICO conspiracy, 18 U.S.C. § 1962(d), and award plaintiff damages as follows:  Gabinskaya shall be liable for $216,936.00; Novacare shall be jointly and severally liable for a portion of these damages equal to the sum of $72,312.00 and prejudgment interest on $72,312.00, calculated according to the method described above.  Finally, this Court respectfully recommends that the District Court enter a declaratory judgment that plaintiff is not obligated to pay the pending claims submitted by Novacare.

Any objections to the recommendations contained herein must be filed with Chief Judge Amon on or before August 4, 2014.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

The Clerk is directed to enter this Report and Recommendation into the ECF System and to transmit copies by Federal Express to the Defaulting Defendants, and to Novacare's counsel in the state collection actions, at the following addresses:

Tatyana Gabinskaya, MD
1469 84th Street
Brooklyn, NY 11228

Novacare Medical, PC
c/o New York Secretary of State
41 State Street
Albany, NY 12231

Emilia Rutigliano, Esq.
2503 65th Street
Brooklyn, NY 11204

Novacare Medical, PC
2080 East 24th Street, 2nd Fl.
Brooklyn, NY 11229

Danny Montanez & Associates, PLLC
66-66 79th Street
Middle Village, NY 11379

**SO ORDERED.**

**Dated:     Brooklyn, New York
             July 16, 2014**

/s/ *Roanne L. Mann*
**ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**